**TRINITY BAPTIST CHURCH, INC.,**
a North Carolina non-profit
corporation, Plaintiff,

v.

**The CITY OF ASHEVILLE, a North Carolina municipal corporation; and Carrier Heights Neighborhood Association, Defendants.**

No. Civ.1:99CV65.

United States District Court,
W.D. North Carolina,
Asheville Division.

Sept. 28, 1999.

Gary A. Dodd, David R. Payne, Asheville, NC, for plaintiff.

Sarah Patterson Brison Meldrum, Asheville, NC, for defendant City of Asheville.

C. Frank Goldsmith, Jr., Marion, NC, for defendant Carrier Heights, for defendants.

### MEMORANDUM AND ORDER OF DISMISSAL

THORNBURG, District Judge.

**THIS MATTER** is before the Court on the Plaintiff's motion to supplement its complaint and the Defendants' objections thereto. In addition, Defendant Carrier Heights Neighborhood Association (Carrier) has filed two motions for the imposition of sanctions.

### I. FACTUAL BACKGROUND

On April 9, 1999, Trinity Baptist Church, Inc. (Trinity) initiated this declaratory judgment action seeking a declaration that a local zoning ordinance is unconstitutional and enjoining the enforcement thereof. Trinity alleged that prior to 1997 it had received numerous approvals from Defendant City of Asheville (City) to develop and expand its property, including conditional approval in 1996 for the construction of an auditorium and a daycare facility. However, in May 1997, the City adopted the Unified Development Ordinance (UDO) which, for the first time, redefined a church to exclude daycare, recreational and educational facilities incidental to a place of worship. Trinity alleges the change was made in order to allow the City to collect property taxes from churches in connection with those facilities. This caused the Plaintiff, through a series of submissions, to resubmit site plans for review which ultimately were approved; and in January 1999, Trinity was issued a permit to complete the project (the Level II Project). However, in February 1999 Carrier filed an appeal from the action of the zoning administrator. Under the provisions of the UDO, the filing of this appeal required Trinity to stop all construction on the project.

In Count One, it is alleged that Carrier has violated Trinity's constitutional rights by engaging in the appeal process allowed by the UDO. The City is alleged, by the adoption of the UDO, to have interfered with Trinity's exercise of religious beliefs in violation of the First Amendment. In the second cause of action, Trinity claims the redefinition of "church" was done in order to allow taxation, thus constituting an *ultra vires* act which violates the separation of church and state. In Count Three, Trinity claims that under the UDO schools are allowed to operate daycare facilities while churches are not. Because there is no rational basis for this distinction, Trinity claims its equal protection rights have been violated. And, because it is the public policy of North Carolina to encourage the construction of daycare facilities, the UDO is in violation of that public policy. Count Four of the Complaint. Finally, in Count Five Trinity claims that under North Carolina law it has a vested right in the completion of its development.

Both Defendants filed answers to the complaint in May 1999. In the City's Answer, it admitted that in December 1998, Trinity submitted an application for review of site plans for a Level III Project consisting of an office and daycare addition. However, on the same day the application was submitted, it was revised to exclude the daycare addition. And, the City admitted that in May 1999, a conditional use permit for the Level III Project was issued, subject to certain conditions.

The City also admitted that in February 1999, Carrier submitted to the Board of Adjustment an "Interpretation Application" concerning the Level II Project and "after due notice and hearing, the Board of Adjustment decided this matter in favor of" Trinity. Answer of City of Asheville, at ¶ 18. Moreover, no stay was ever issued by the Board of Adjustment. *Id.*

Plaintiff now seeks to supplement the complaint by adding two additional causes of action. The Sixth Cause actually contains two different claims and is alleged only against the City. Plaintiff complains that in April 1999, the City Council voted to approve a conditional use permit for the Level III Project with special conditions. Among those conditions was a restriction providing that when the 2400–seat sanctuary is in use for congregational services, no other congregational gathering place on the facility may be used. This, Trinity alleges, violates the First Amendment, is in violation of the public policy of North Carolina, is in contradiction to vested rights, and has no rational relationship to a legitimate governmental interest.

In the second portion of the sixth cause of action, it is alleged the City Council voted to impose design standards on the development in order promote compatibility of the sanctuary with the surrounding neighborhood. Trinity claims these standards have not been uniformly applied, violate vested rights, are contrary to state public policy, are void as an *ex post facto* ordinance, and violate the First Amendment.

The proposed seventh cause of action is based on a petition filed by Carrier in June 1999 with the Superior Court of Buncombe County for review of the grant of the conditional use permit for the Level III Project. Trinity alleges that in that state court action, Carrier seeks a declaration that the ordinance allowing the conditional use is void because it is in violation of the UDO. This is based on the new definition of church and Carrier's claim that Trinity therefore should not be allowed to operate daycare and educational facilities on its property. In this proposed claim, Trinity states, "The appeal of the Defendant Association (Carrier) seeks to impose upon the Plaintiff the aforementioned highly restrictive definition" of a church. Exhibit A, Plaintiff's Supplemental Pleadings, *attached to* Plaintiff's Motion for Leave to Supplement, at ¶ 62. Trinity seeks an order enjoining Carrier's state court proceedings.

Thus, on the one hand Trinity seeks a declaration that the conditional use permit

is illegal and on the other hand, seeks to enjoin Carrier from having that same permit declared void in state court. In response, the Defendants show, and Trinity admits, that it sought and was granted leave to intervene in Carrier's state court action. In Trinity's answer in the state matter, the following assertions were made:

> It is admitted that the Church has a Bible College, and since approximately 1979 had a fellowship building which is used for youth ministry and it is admitted that it has a television ministry. The Church has submitted plans, adhered to recommendations of the Technical Review Committee for the City of Asheville and received a permit to build a 1500 seat auditorium. Further, since 1991 the Church has presented plans and received approval for a daycare facility, a 107,000 square foot auditorium which would accommodate a school, modernization of existing buildings to allow for office space and a softball field as well as parking to accommodate the same. The level III conditional use permit will allow the construction of a 107,000 square foot building to accommodate worship.

Exhibit B, Trinity's Answer, *attached to* City's Response to Plaintiff's Motion to Supplement, at ¶ 4 [City's Response]. Thus, Trinity has obtained permission from the City to complete its construction project. So, while in the federal court action Trinity claims the conditional use permit is illegal, in the state court action it seeks enforcement thereof. Exhibit A, Trinity's Motion to Intervene as a Respondent, *attached to* City's Response, at ¶ 4 ("This Conditional Use Permit will allow the Church to complete construction of certain facilities necessary and instrumental in its worship.").

Moreover, in its state court answer, Trinity asserts as defenses the same claims raised in the federal action: application of the new definition of church in the UDO to Trinity will violate its constitutional rights (although Trinity affirmatively asserts the definition has not in fact been applied to it), there is no rational basis for the distinction made by the UDO between schools, which are allowed to operate daycare facilities and churches which are not, prohibiting the development of daycare facilities is against state public policy, and the church has a vested right in its development.

Defendants argue there is no reason for these claims to proceed simultaneously in two different courts. Trinity responds that it intends to remove the state court action to federal court.

## II. JURISDICTION

 The Court is compelled to raise the issue of its jurisdiction over this matter. *United States v. White*, 139 F.3d 998, 999–1000 (4th Cir.), *cert. denied*, 525 U.S. 933, 119 S.Ct. 343, 142 L.Ed.2d 283 (1998) (District courts should always consider the question of subject matter jurisdiction even if raised *sua sponte.*).

> Like all other actions heard in federal court, a declaratory judgment action is subject to the case-or-controversy requirement of Article III of the Constitution. Thus, although the Declaratory Judgment Act enables a prospective defendant to obtain a binding legal determination of the parties' rights prior to engaging in the disputed behavior, the Act extends only to those situations in which a live, concrete dispute between the parties actually exists. The Declaratory Judgment Act was in no way intended to-nor constitutionally could it-authorize a federal court's issuance of an advisory opinion.

12 *Moore's Federal Practice*, § 57.22[1] (3d ed.1999). "[A]t an irreducible minimum, Art. III requires the party who invokes the court's authority to 'show (1) that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant,' and (2) that the injury 'fairly can be traced to the challenged action' and (3) 'is likely to be redressed by a favorable decision.' " *Friends of the Earth, Inc. v. Gaston Cop-*

*per Recycling, Corp.,* 179 F.3d 107, 113 (4th Cir.1999) (quoting *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982)). Based on the pleadings before the Court, Trinity has obtained permission from the City to do that which it set out to do and therefore cannot show any injury.[1] *Id.; Stanton v. Town of Pawleys Island,* 958 F.2d 369 (table), 1992 WL 46099 (4th Cir.1992) (No case or controversy because the plaintiff obtained the interpretation of local ordinance which he desired.). "Otherwise plaintiffs with mooted claims of injury could gain federal jurisdiction simply by demanding declaratory relief. The Supreme Court has made clear that the Declaratory Judgment Act ... did not augur such an upheaval in the traditional law of standing." *Comite de Apoyo a los Trabajadores Agricolas (CATA) v. U.S. Dept. of Labor,* 995 F.2d 510, 513 (4th Cir.1993). Thus, " '[w]henever it appears that no genuine controversy between the parties exists, the Court will dismiss the action *ex mero motu.*' " *Messer v. Town of Chapel Hill,* 346 N.C. 259, 261, 485 S.E.2d 269, 270 (1997) (quoting *Stanley v. Dept. of Conservation & Dev.,* 284 N.C. 15, 29, 199 S.E.2d 641, 650 (1973)) (Dismissing appeal because landowner contesting the constitutionality of town's zoning ordinances sold the land while the appeal was pending.).

Moreover, assuming *arguendo* that a live controversy exists, the undersigned is compelled to abstain from exercising jurisdiction.[2] *Front Royal & Warren County Ind. Park v. Front Royal,* 945 F.2d 760, 763 (4th Cir.1991) ("[W]e may apply the abstention doctrine at our own instance even if no party urges the doctrine upon us."); *Pomponio v. Fauquier County Bd. Of Sup'rs,* 21 F.3d 1319, 1320 (1994), *overruled on other grounds, Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706,

116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (Affirming district court's *sua sponte* dismissal of action after abstaining from exercising jurisdiction.).

In *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424, [ ] (1943), the Supreme Court set out a form of abstention which is appropriate in order to prevent unnecessary interference by the federal courts in the interpretation of a complex state regulatory scheme.... "[L]and use questions ... are the peculiar concern of local and state governments, and traditionally, federal courts have not interfered with state courts in the area of land use policy." ... [Thus,] a state adjudication might avoid: (1) the necessity of a decision on the federal constitutional questions presented; and (2) "needless friction in federal-state relations over the administration of purely state affairs." *Front Royal,* 945 F.2d at 763 (citations omitted). Under the doctrine of *Burford* abstention, and its progeny, where there is timely and adequate state court review, "a federal court sitting in equity must decline to interfere with the proceedings" if the same would be disruptive of state or local efforts to establish a "coherent policy with respect to a matter of substantial public concern." *New Orleans Public Service, Inc. v. City of New Orleans,* 491 U.S. 350, 361, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989). "Virtually all [cases involving state or local zoning or land use laws], when stripped of the cloak of their federal constitutional claims, are state law cases. The federal claims are really state law claims because it is either the zoning or land use decisions, decisional processes, or laws that are the bases for the plaintiffs' federal claims." *Pomponio,* 21 F.3d at 1326. Here, although Trinity's complaint alleges both state and federal claims, the essence

---

1. Indeed, the allegations contained in the complaint and proposed supplemental pleadings show Trinity has received conditional use permits for both projects and has not had the new definition of church applied to it.

2. Trinity's claim for declaratory judgment against Carrier is based on 42 U.S.C. § 1983. However, Carrier is not a state actor and therefore there is no jurisdiction. *Employers Resource Management Co., Inc. v. Shannon,* 65 F.3d 1126, 1131 (4th Cir.1995).

of its cause involves the authority of the City to change its zoning laws by the passage of the UDO or the manner, timing and delay involved in its obtaining of permits.

> [C]ases involving questions of state and local land use and zoning law are a classic example of situations in which "the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" [ ] We can conceive of few matters of public concern more substantial than zoning and land use laws. The proposition is not stated better than by Justice Marshall in dissent in *Village of Belle Terre v. Boraas* [ ]:
>
>> I am in full agreement with the majority that zoning is a complex and important function of the State. It may indeed be the most essential function performed by local government, for it is one of the primary means by which we protect that sometimes difficult to define concept of quality of life.
>
> It is also clear that in most of these cases requiring *Burford* abstention, the federal claim cannot be untangled from the state or local zoning or land use law. Therefore, we believe that in the usual case federal courts should not leave their indelible print on local and state land use and zoning law by entertaining these cases, and, in effect, sitting as a zoning board of appeals. . . .

*Id.,* at 1327 (internal citations omitted). Although the complaint alleges that the application of the UDO to Trinity is unconstitutional and that the ordinance itself is unconstitutional, Trinity has alleged that it has received permits for both projects and that the UDO has not been applied to it. Trinity claims it has had to go through numerous procedural hurdles with the City but ultimately has maintained its permits to complete its construction project. In the proposed supplemental pleadings, Trinity alleges it finally received exceptions from the UDO but this has been appealed by Carrier to state court. And,

it alleges that the conditional uses imposed in the permits, use of other facilities during worship services and the compatible design condition, are unconstitutional. However, the undersigned cannot consider these to be serious constitutional claims in view of Trinity's position in the state court appeal that the conditional use permit should be upheld. The essence of the complaint depends "upon the construction of state land use law concerning the scope of authority of local planning bodies and . . . the proper interpretation of state and local land use law and county zoning practices and procedure." *Front Royal,* 945 F.2d at 763. The undersigned therefore concludes that this action does not involve a genuine and independent federal claim, such as of religious prejudice. *See, Marks v. City of Chesapeake, Va.,* 883 F.2d 308 (4th Cir.1989) (involving application of a palmist for a variance in order to operate a palmistry in his home denied due to local population's opinion it was against the Old and New Testaments and a form of witchcraft); *Stuart Circle Parish v. Zoning Appeals,* 946 F.Supp. 1225 (E.D.Va.1996) (involving whether zoning ordinance limiting feeding and housing of the homeless within churches to no more than 30 homeless individuals for up to seven days between October and April violates the Religious Freedom Restoration Act). The Court therefore finds the appropriate place for resolution of the issues presented here is in the state court. *See,Front Royal & Warren County Indus. Park Corp. v. Town of Front Royal,* 135 F.3d 275, 278 (4th Cir.1998) ("The last time IPC was before us, we vacated, on the basis of *Burford* abstention, the district court's orders granting summary judgment. . . . In particular, we envisioned that IPC should seek whatever remedy was appropriate under Virginia's Annexation Court scheme as well as whatever other state remedies might be available, suggesting a common law cause to action to vindicate the due process rights afforded under the [Virginia Constitution]. . . ."). As recently as August of this year, the Fourth Circuit has

held in affirming *Burford* abstention by the district court, "Bannum consciously avoided the state forum, choosing to challenge the [zoning board's] decision in federal court without first filing a state court action." *Bannum, Inc. v. City of Columbia*, 1999 WL 672108 *1 (4th Cir.1999). And, because Trinity seeks only equitable relief, there is no bar to *Burford* abstention. *Quackenbush, supra.*

## III. ORDER

**IT IS, THEREFORE, ORDERED** that this action is hereby **DISMISSED** for lack of a case or controversy; and

**IT IS FURTHER ORDERED** that, in the alternative, this action is hereby **DISMISSED WITHOUT PREJUDICE** under the doctrine of *Burford* abstention; and

**IT IS FURTHER ORDERED** that the Plaintiff's motion to supplement is hereby **DENIED** as moot; and

**IT IS FURTHER ORDERED** that Carrier's motions for sanctions are hereby **DENIED.**